NANCY B. CLARK, Administratrix, *vs.* ISAAC FLETCHER.

The court has authority to require an auditor's report to be read at the trial, although neither party relies upon it, or desires to offer it in evidence.

When a witness, in his cross-examination by the plaintiff, has been asked if he had a conversation with the defendant upon a certain subject-matter, and the plaintiff states, in reply to a question by the court, that he shall rely upon the fact that such conversation was had, it is then competent for the defendant to put in the conversation.

In a suit for work done in drawing stone, and for teams sold, evidence on the part of the defendant to show that the plaintiff owed many debts, and was frequently pressed for payment, and that persons refused to give him credit during the time covered by the account in suit, is inadmissible, although the plaintiff has put in evidence of his having then owned a considerable amount of teams and other like property.

A paper produced upon notice at a trial, and received and examined by the party calling for it, may be put in evidence by the party producing it if the party who called for it declines to use it, although it was called for under a misapprehension of its contents.

CONTRACT, upon an account annexed, for work done, in drawing stone, for oxen and other property sold, in 1854 and 1855. The case was referred to an auditor, by order of court. At the trial in the superior court the defendant asked that the plaintiff should put in the auditor's report as a part of the case. The plaintiff stated that she did not rely upon it, and did not propose to put it in as a part of her case, although the defendant could do so if he desired; but *Wilkinson,* J., ruled that it was the duty of the plaintiff to put it in as one of the documents

5 *

of her case, and ordered her to do so, which she did under ob-
jection.

The plaintiff, in opening her case to the jury, stated that her
intestate was possessed of considerable property, consisting of
teams, &c., at the time he commenced work for the defendant;
and she put in some evidence of his having owned one thou-
sand dollars worth of such property, which she contended had
been received by the defendant. In reply to this, the defendant
was allowed to introduce evidence, under objection, that the
plaintiff's intestate owed many debts, and was frequently pressed
for payment, and was once sued for a small debt; and that per-
sons refused to give him credit while he was employed by the
defendant.

It was claimed by the defendant that on the 15th day of Au-
gust 1853 the plaintiff's intestate sold out all his teams and the
like property to the defendant, for which payment was made at
the time; and that afterwards said intestate had no teams, and
could not have drawn the loads of stone sued for, and that he
had no teams to sell at the time mentioned in the account an-
nexed. To prove the sale of the 15th of August, the defendant
produced a bill of sale attested by N. W. Harmon, who was
called as a witness, and testified to certain statements made by
one or both of the parties at the time of its execution. On
cross-examination the plaintiff asked the witness if he did not
have a conversation upon the same subject-matter with the de-
fendant alone, upon the same day and prior, but stating expressly
that she did not ask what the conversation was. The defendant
thereupon claimed that he had the right to put in that conversa-
·tion. The court asked the plaintiff if she relied upon the fact
that the defendant had such a conversation, and she replied in
the affirmative; and the court thereupon admitted the conversa-
tion to be given in evidence, against the plaintiff's objections.

Notice was given to the plaintiff to produce a certain paper
in the handwriting of her intestate, and during the trial the de-
fendant called for the paper, which was produced, and examined
by the defendant's counsel, who then declined to use it. The
plaintiff insisted that the paper should be read. Evidence was

then offered tending to prove that the defendant was mistaken as to the contents of the paper ; and the court, being satisfied from the evidence that the defendant's counsel, acting upon mistaken information, not coming from their client, intended to call for a different paper which they supposed to exist, did not .equire them, or allow the plaintiff to use it.

The verdict was for the plaintiff, for much less than the amount of her claim, and she alleged exceptions to the above rulings.

*D. Saunders, Jr.* for the plaintiff.

*B. F. Butler & B. F. Watson,* for the defendant.

BIGELOW, C. J.  1.  The exception to the order of the court, requiring the plaintiff to read the report of the auditor to the jury, cannot be sustained.  The argument in its support proceeds on a misapprehension of the main purpose for which the statutes giving authority to the courts to appoint auditors were enacted.  Rev. Sts. *c.* 96, § 25.  *St.* 1856, *c.* 202.  They were not intended merely to promote the convenience of suitors, but were designed also to furnish an important aid in the administration of justice.  Every one versed in the trial of causes is aware that there are cases in which an inquiry into the facts is rendered difficult by the formalities attendant on proceedings in courts, and that it is often impracticable to explain to a jury the proper application of testimony, especially where there are complicated accounts or minute items to be examined, or where it becomes necessary to investigate questions turning on the results of scientific inquiry and research.  It is therefore essential, in these and other similar cases, that a preliminary investigation should be had under the authority of the court, by means of which the precise points in controversy can be ascertained, and the evidence bearing on them stated in a clear and condensed form, so that a jury may be able intelligibly to pass upon the issues with facility and without unnecessary loss of time. It is quite obvious that this main and important object of the statutes would be liable to be wholly defeated, if the parties were at liberty to disregard or reject the report of an auditor because his finding did not happen to be in accordance with the

views of either party. As the court has power to send a case to an auditor without, and even against, the consent of the parties, so in like manner it has authority to require that his report should be read in the progress of the trial, although neither of them propose to offer it as proof. It is made evidence in the case by the provisions of the statutes, and it cannot be set aside at the pleasure of the parties. Indeed it would be worse than an idle ceremony to incur the delay and expense of a hearing before an auditor, if his report is to be excluded on the sole ground that it does not support the case which either party desires to establish before the jury.

In the case at bar, therefore, the plaintiff has no just ground of complaint because her counsel were required to read the report of the auditor. It does not appear that it was used for any improper purpose, or that any instructions were given to the jury concerning its effect as evidence, which were not legitimate and sufficiently favorable to the plaintiff. The time when and the person by whom it was read are wholly immaterial, and entirely within the sound discretion of the court by which the conduct of the trial is governed.

2. The conversation between the defendant and Mr. Harmon was admissible on two grounds. In the first place, the plaintiff had opened the inquiry by asking the witness, on the examination in chief, the subject in relation to which the conversation took place. She did not confine her question to the mere fact that a conversation was had between them; but she inquired concerning its subject-matter. After this, she could not restrict the cross-examination so as to exclude its details. But the more decisive answer to the objection is, that the plaintiff sought to draw an inference from the fact that the conversation related to the sale of the property and the accounts between the parties. To rebut such inference, the defendant had a right to introduce all that was said on the subject; otherwise the plaintiff might draw a false inference which the defendant would have no means of rebutting.

3. The testimony concerning the pecuniary credit of the plaintiff's intestate and the extent of his liabilities was irrelevant to

the issue, and ought to have been excluded. It had no legitimate tendency to prove that the property which was in the defendant's possession and control was not received by him from the plaintiff, or that the debt which the plaintiff sought to recover was not justly due. The inference which the defendant intended should be drawn from this testimony was altogether too remote to furnish any ground for its introduction as substantive proof.

4. The paper which was produced by the plaintiff on notice from the defendant ought not to have been excluded. There was no doubt concerning the identity of the document. The paper produced was the one for which the defendant had called, and it was examined by the defendant's counsel. Under such circumstances, it was the right of the plaintiff to use it in evidence, if the defendant refused or omitted to put it into the case. A party cannot require his adversary to produce a document, and, after inspecting it, insist on excluding it from the case altogether. Such a course of proceeding would give one party an unfair advantage over the other. He would gain the privilege of looking into the private documents of the other party without any corresponding obligation or risk on his own part. It is therefore generally deemed a just and wise rule that in such cases the paper called for and produced, after it has been seen and examined by the party calling for it, becomes competent evidence in the case for both parties. 1 Greenl. Ev. § 563. It is manifest that this rule would be of little use, if the paper can be excluded on the allegation that the party calling for it mistook the nature of its contents. Generally, the party seeking for it acts on the supposition that it contains matter favorable to his side of the case. He therefore assumes the risk of making it evidence ; and cannot be heard to say, after he has ascertained its contents by inspection, that he intended to call for a different paper, or, in other words, that its contents were not such as he expected. If there is no doubt as to the identity of the document, the party who produces it has the right to insist on its being read to the jury ; and the court cannot, in the exercise of their discretion, deny him this privilege.

It is hardly necessary to add, that the parties must be bound by the acts of their counsel in the conduct of a trial; and that it was no valid ground for excluding the paper, that the counsel, in calling for its production, acted upon mistaken information concerning its contents, not derived from their client.

*Exceptions sustained.*